IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SAMSARA INC.,                   )
                                        )
          Plaintiff,        )
                                        )
        v.               )   C.A. No. 24-84 (MN)
                                        )
MOTIVE TECHNOLOGIES, INC.,   )
                                        )
          Defendant.      )

## <u>MEMORANDUM OPINION</u>

John W. Shaw, Karen E. Keller, Nathan R. Hoeschen, Emily DiBenedetto, Lindsey M. Gellar, SHAW KELLER LLP, Wilmington, DE; Ellisen S. Turner, P.C., Ali-Reza Boloori, KIRKLAND & ELLIS LLP, Los Angeles, CA; Joseph A. Loy, P.C., Joshua L. Simmons, P.C., KIRKLAND & ELLIS LLP, New York, NY; Jeanne M. Heffernan, P.C., KIRKLAND & ELLIS LLP, Austin, TX – attorneys for Plaintiff

Daniel M. Silver, Daniel J. Brown, MCCARTER & ENGLISH, LLP, Wilmington, DE; Joseph G. Petrosinelli, C. Bryan Wilson, Angela Pyo, Jack H. Danon, WILLIAMS & CONNOLLY LLP, Washington, DC – attorneys for Defendants

August 14, 2024
Wilmington, Delaware



NOREIKA, U.S. DISTRICT JUDGE:

Before the Court is the motion (D.I. 25) of Defendant Motive Technologies, Inc. ("Defendant" or "Motive") to transfer this case to the Northern District of California pursuant to 28 U.S.C. § 1404(a).  For the reasons set forth below, the Court GRANTS Defendant's motion.[1]

## I.    BACKGROUND

### A.    The Parties

Plaintiff Samsara Inc. ("Plaintiff" or "Samsara") is a Delaware corporation with its principal place of business in San Francisco, California.  (D.I. 23 ¶ 11).  Samsara is a technology company that offers hardware dashboard cameras for motor vehicles along with software applications that use artificial intelligence to critique behind-the-wheel driver behavior and improve driver safety.  (*Id.* ¶¶ 7, 37).

Defendant Motive is also a Delaware corporation with its principal place of business in San Francisco, California.  (*Id.* ¶ 12).  Like Samsara, Motive competes in the market for driver safety and fleet management technology.  (*Id.* ¶¶ 5, 8).  According to the Amended Complaint, Motive engaged in a scheme to steal Samsara's proprietary technology over the course of nearly five years, including by copying Samsara's product designs, marketing strategies, and other patented technical elements of its business.  (*Id.* ¶¶ 1, 2, 9).  Motive allegedly achieved this by, among other things, directing its employees to register for and digitally access Samsara's products using customer accounts with fictitious names or on behalf of fake entities, manipulating Samsara's customer support team by posing as other Samsara customers, and soliciting Samsara's employees to defect to Motive.  (*Id.* ¶¶ 2-5).  The Amended Complaint asserts Motive infringed three of Samsara's patents and violated other statutory and common law.  (*Id.* ¶¶ 125-233).

---

[1]    Because the Court agrees that this case should be transferred, it declines to rule on the parties' other motions discussed herein, which remain pending.  (*See* D.I. 29, 38, 47).

B.     **Procedural History**

On January 24, 2024, Samsara initiated this action by filing a complaint against Motive asserting claims for patent infringement, false advertising under the Lanham Act, 15 U.S.C. § 1125(a), fraud under California statutory and common law, Cal. Civ. Code §§ 1709 *et seq*., violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.* (D.I. 1 ("the Original Complaint")).  Shortly after, on February 8, Samsara filed a companion complaint with the U.S International Trade Commission ("ITC") pertaining to the alleged infringement of the same patents at issue here.  (D.I. 27, Ex. C).  The ITC instituted an investigation on March 12 ("the ITC Investigation").  (D.I. 34, Ex 1).

On February 15, 2024, Motive filed a complaint in federal court in the Northern District of California, initiating an action captioned *Motive Technologies, Inc. v. Samsara Inc.*, No. 24-902 (JD) (N.D. Cal.) ("the California Action").  (D.I. 27, Ex. D).  In the California Action, Motive asserts near-mirror claims against Samsara for patent infringement, false advertising, fraud, misappropriation of trade secrets, defamation, and intentional interference with business relations. (*Id.*).

On February 28, 2024, Motive moved to dismiss the Original Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and simultaneously moved to transfer the case to the North District of California pursuant to 28 U.S.C. § 1404(a).  (D.I. 15).  That same day, pursuant to an arbitration clause ("Arbitration Clause") contained in Samsara's commercial Terms of Service agreement ("Terms" or "TOS"), (D.I. 27, Ex. B § 19.1),[2] Motive initiated an

---

[2]     The parties vigorously dispute whether the TOS created an enforceable contract.  If it did, Motive says, the parties would be beholden to the TOS's Arbitration Clause, which states that "[a]ny dispute arising from or relating to these Terms or Customer's use of the Products . . . shall be finally and exclusively settled by confidential arbitration in San

arbitration before the Judicial Arbitration and Mediation Services, Inc. ("JAMS") seeking a declaratory judgment that Samsara's claims must proceed in arbitration and that Motive is not liable for the claims asserted in this Court and before the ITC ("the JAMS Arbitration"). (D.I. 34, Ex 2 at 1).

On March 20, 2024, rather than answer Motive's motion to dismiss and transfer, Samsara filed an amended complaint in this action ("the Amended Complaint"). (D.I. 23). The Amended Complaint added two new claims to the seven claims asserted in the Original Complaint: a false advertising claim under the UCL; and a false advertising claim under the Delaware Deceptive Trade Practices Act ("DDTPA"), 6 Del. Code §§ 2351 *et seq.* (D.I. 23 ¶¶ 221-233).

On April 3, 2024, Motive again moved to transfer the case to the Northern District of California and, in the alternative, dismiss the Amended Complaint. (D.I. 25). Motive also filed a motion to stay this action due to the pendency of the ITC Investigation pursuant to 28 U.S.C. § 1659(a). (D.I. 29).

On April 17, 2024, Samsara opposed the motions to transfer, dismiss, and stay. (D.I. 31, 33). On April 24, Motive filed reply briefs on all three motions. (D.I. 35, 36). On May 1, Samsara

---

Francisco, California . . . in accordance with the Arbitration Rules and Procedures of [JAMS]. ('JAMS Rules')." TOS § 19.1. And even if the Arbitration Clause is invalid, argues Motive, the parties are bound to litigate this dispute pursuant to the TOS's forum selection clause ("the Forum Selection Clause"), which stipulates that, "[s]ubject to the agreement to arbitrate set forth herein, exclusive jurisdiction and venue for actions arising from or related to these Terms or Customer's use of the Products will be the state and federal courts located in San Francisco County, California" and "will be governed by the laws of the State of California." TOS § 20. Because the Court concludes that this action should be transferred under the traditional *Jumara* analysis, it declines to rule on whether the TOS created an enforceable contract, whether the parties are bound by the Arbitration Clause or Forum Selection Clause, and whether it is the JAMS arbiter or a federal court that has the authority to interpret the preliminary issue of arbitrability under the TOS.

moved to strike Motive's reply on the motion to stay and alternatively requested permission to file a sur-reply.  (D.I. 38).  That motion was fully briefed as of May 22, 2024.  (D.I. 39, 40).

In the meantime, the JAMS Arbitration moved forward.  On June 4, Samsara filed an unopposed motion in this Court for a contingent stay of any claims found to be arbitral, which the Court so-ordered the next day.  (D.I. 43).  On June 26, Samsara filed an emergency motion for a preliminary injunction seeking to enjoin Motive from proceeding with the JAMS Arbitration.  On July 3, Motive submitted its answering brief.  (D.I. 53).  On July 8, Samsara replied, and the motion was fully submitted.  (D.I. 56).[3]

## II.   LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice," district courts have the authority to transfer venue "to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  In determining whether an action should be transferred under § 1404(a), the Court will "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum."  *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (citation omitted).  "[A] plaintiff, as the injured party, generally [is] 'accorded [the] privilege of bringing an action where he chooses.'"  *Helicos Biosciences Corp. v. Illumina, Inc.*, 858 F. Supp. 2d 367, 371 (D. Del. 2012) (quoting *Norwood v. Kirkpatrick*, 349 U.S. 29, 31 (1955)).  A plaintiff's choice of location in bringing the action, therefore, "should not be lightly disturbed."  *Jumara*, 55 F.3d at 879 (citation omitted).

---

[3]    On August 9, 2024, Samsara submitted a notice of subsequent authority, (D.I. 58), informing the Court that the arbitrator had delayed proceedings in the JAMS Arbitration pending the Court's decision on Samsara's motion for a preliminary injunction.

In the Third Circuit, a motion to transfer is evaluated pursuant to twelve "private and public interests protected by the language of § 1404(a)." *Id*. The six private interests include:

> [(1)] plaintiff's forum preference as manifested in the original choice; [(2)] the defendant's preference; [(3)] whether the claim arose elsewhere; [(4)] the convenience of the parties as indicated by their relative physical and financial condition; [(5)] the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and [(6)] the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* (citations omitted). The six public interests include:

> [(7)] the enforceability of the judgment; [(8)] practical considerations that could make the trial easy, expeditious, or inexpensive; [(9)] the relative administrative difficulty in the two fora resulting from court congestion; [(10)] the local interest in deciding local controversies at home; [(11)] the public policies of the fora; and [(12)] the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879-80 (citations omitted).

"The burden is on the moving party to establish that a balancing of proper interests weigh[s] in favor of the transfer." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). "[C]ourts [have] broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Jumara*, 55 F.3d at 883 (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). "[U]nless the balance of convenience of the parties is strongly in favor of [the] defendant, the plaintiff's choice of forum should prevail." *Shutte*, 431 F.2d at 25 (citation omitted).

## III.    DISCUSSION

### A.    Appropriateness of the Transferee Venue

"The first step in the transfer analysis is to determine whether this action could have been brought in the proposed transferee venue," here, the Northern District of California ("Northern

District").  *Papst Licensing GmbH & Co. KG v. Lattice Semiconductor Corp.*, 126 F. Supp. 3d 430, 437 (D. Del. 2015).  Here, there is no dispute that this case could have been brought in the Northern District.  Indeed, the California Action is pending there between the parties.[4]  Thus, the threshold inquiry under § 1404(a) is satisfied and the only remaining issue before the Court is whether to exercise its discretion to transfer the case to the Northern District.  The Court addresses the *Jumara* factors in turn below.

B.    **The *Jumara* Factors**

1.    **Plaintiff's Forum Preference**

"It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request."  *Shutte*, 431 F.2d at 25.  "Assuming jurisdiction and proper venue, weight is given to plaintiff's choice because it is plaintiff's choice and a strong showing under the statutory criteria in favor of another forum is then required as a prerequisite to transfer."  *Puff Corp. v. KandyPens, Inc.*, No. 20-976 (CFC), 2020 WL 6318708, at *3 (D. Del. Oct. 28, 2020) (citation omitted).  Samsara is a Delaware-incorporated entity that has elected to

---

[4]     Samsara briefly suggests that the dueling federal court actions are subject to the "first-to-file rule," (D.I. 33 at 2), which "counsels that a later-filed action involving the same controversy should be dismissed, transferred, or stayed in favor of the first-filed action."  *Nexans Inc. v. Belden Inc.*, 966 F. Supp. 2d 396, 403 (D. Del. 2013).  According to Samsara, under that rule, this Court must retain jurisdiction because Samsara filed this action before Motive filed the California Action.  As Motive correctly points out, however, (D.I. 26 at 13), this action does not involve "the same issues already before another district court."  *E.E.O.C. v. Univ. of Pennsylvania*, 850 F.2d 969, 971 (3d Cir. 1988).  Indeed, "the primary focus of the analysis is on whether the issues in the current matter 'concern the same set of facts' as in the first-filed action."  *In re Mobile Telecomms. Techs., LLC*, 243 F. Supp. 3d 478, 485 (D. Del. 2017) (citation omitted).  This action stems from Motive's alleged infringement of Samsara's patents and theft of its proprietary technology, whereas the California Action principally involves Samsara's purported infringement of Motive's patent and misappropriation of its trade secrets – two factually distinct disputes.  Accordingly, the first-to-file rule does not control here.  *Id.*

bring suit in Delaware.  That choice remains entitled to "paramount consideration," and, therefore, this factor weighs against transfer.  *Shutte*, 431 F.2d at 25.

### 2.    <u>Defendant's Forum Preference</u>

Motive has a clear interest in litigating in the Northern District, where it is headquartered, its employees are located, and there is pending related litigation.  "As this Court has often held, the physical proximity of the proposed transferee district to a defendant's principal or key place of business (and relatedly, to witnesses and evidence potentially at issue in the case) is a clear, legitimate basis for seeking transfer."  *Papst*, 126 F. Supp. 3d at 439.  This factor favors transfer.

### 3.    <u>Whether the Claims Arose Elsewhere</u>

Patent claims arise wherever alleged infringement has occurred.  *See Treehouse Avatar LLC v. Valve Corp.*, 170 F. Supp. 3d 706, 710 (D. Del. 2016).  "[A]s to this factor, this Court typically focuses on the location of the production, design and manufacture of the accused instrumentalities."  *Papst*, 126 F. Supp. 3d at 439.  Here, the nexus of the claimed infringement occurred in San Francisco, California – which Samsara does not dispute, (D.I. 33 at 19) – because Motive "designed, developed, and [produc]ed the accused products in the Northern District of California."  *Allen Med. Sys., Inc. v. Mizuho Orthopedic Sys., Inc.*, No. 21-1739 (CFC), 2022 WL 1046258, at *2 (D. Del. Apr. 7, 2022).[5]

In addition, Samsara claims that "Motive's leadership team" orchestrated its alleged conduct, and Motive's employees carried it out, from "Motive offices in San Francisco."  (D.I. 23 ¶¶ 2, 53); (*id.* ¶ 3 (Motive's "management team," located in San Francisco, "endorsed a policy whereby senior Motive employees created fictitious companies to procure Samsara products and

---

[5]    For Samsara's part, San Francisco is listed as the location of the company on the patents at issue here, and more than a dozen of the patents' inventors are listed as being from San Francisco or the surrounding area.  (D.I. 23, Ex. 1 at 1 & Ex. 2 at 1).

access its platform")); (*see also* D.I. 28 ¶¶ 4-6 (averring that, "[a]t the relevant time," a dozen Motive "employees named in [the Amended] Complaint worked in or around San Francisco, California" at "Motive's principal place of business")).

On the other hand, there are no allegations that any of the conduct at issue occurred in, from, or even near Delaware. Neither party is alleged to maintain an office or employ individuals in Delaware. (D.I. 28 ¶ 3). Samsara asserts in its opposition papers that the parties have other offices and employees elsewhere in the U.S. and abroad, (D.I. 33 at 5; D.I. 34, Exs. 6-7), and supposes that the alleged conduct "may have taken place in any of those locations," (D.I. 33 at 19). But allegations about those satellite offices and personnel are nowhere to be found in the Amended Complaint (aside from a single mention of Buffalo, New York), and do not outweigh the numerous allegations that the conduct at issue here was "carried out and sanctioned by multiple senior-level Motive employees, including members of its executive team," who sat in Motives offices in San Francisco. (D.I. 23 ¶ 55); (*see also, e.g.*, *id.* ¶ 3 (Motive's alleged scheme "has been carried out and sanctioned by Motive's CEO, CPO, CTO and other senior employees" located in California)).

In light of the foregoing, the Court concludes that the claims at issue here arose in the Northern District of California. Therefore, this factor weighs in favor of transfer.

### 4.    Convenience of the Parties

The Court considers three factors in determining the convenience of the transferee forum for the parties: (1) the parties' physical location; (2) the parties' logistical and operational costs of traveling to litigate in Delaware, as opposed to the proposed transferee district; and (3) the relative ability of each party to bear these costs in light of its size and financial standing. *See MEC Resources, LLC v. Apple, Inc.*, 269 F. Supp. 3d 218, 225 (D. Del. 2017).

The parties are both headquartered in San Francisco, California, minutes from the transferee court. (D.I. 23 ¶¶ 11-12). This Court, by contrast, sits nearly 3,000 miles away in

Wilmington, Delaware. Traveling to Delaware for the purposes of litigation would impose substantial additional costs in comparison to litigating in the Northern District. This is particularly true given that the parties' relevant employees are largely located in California, including at least a dozen Motive personnel who are named in the Amended Complaint. (D.I. 28 ¶ 6). Dragging all those witnesses to court in Delaware imposes an operational burden on the parties that would be minimized by granting the transfer sought.

Samsara counters that Motive has global operations, can afford the financial obligation, and that there will be a "likely low amount of travel involved." (D.I. 33 at 19-20); *see, e.g.*, *Graphics Props. Holdings Inc. v. Asus Computer Int'l, Inc.*, 964 F. Supp. 2d 320, 328 (D. Del. 2013) ("[A]s a practical matter, regardless of the trial venue, most of the discovery will take place in California or other locations mutually agreed to by the parties."). Accepting those arguments as true, they nonetheless do not outweigh the fact that both parties' primary offices and their relevant employee witnesses are physically located in the Northern District. Litigating this case there will impose lower financial and operational burdens on the parties. This favors transfer.

### 5.    Convenience of the Witnesses

This factor carries weight "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879. "[W]itnesses who are employed by a party carry no weight, because each party is able, indeed, obligated to procure the attendance of its own employees for trial." *VLSI Tech. LLC v. Intel Corp.*, No. 18-966 (CFC), 2018 WL 5342650, at *7 (D. Del. Oct. 29, 2018) (citation and quotation marks omitted). Accordingly, this factor only concerns third-party witnesses, and "is only given weight when there is some reason to believe that a witness actually will refuse to testify absent a subpoena." *Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 732 (D. Del. 2012). Because no party has identified any third-party witness who would be unavailable for trial in either Delaware or California, this factor is neutral.

6.    **Location of Books and Records**

This factor is neutral.  Motive's documents, records, and data servers are all stored in its principal offices in San Francisco, not in Delaware (D.I. 28 ¶ 5).  The same appears to be true of Samsara.  (D.I. 33 at 20).  But the Court gives weight to this factor only "to the extent that the files [and other evidence] could not be produced in the alternative forum."  *Jumara*, 55 F.3d at 879. This factor receives minimal weight given the state of litigation technology today, the advent of e-discovery, and the ease with which documentary evidence can be produced electronically.  *See, e.g.*, *Blackbird Tech LLC v. E.L.F. Beauty, Inc.*, No. 19-1150 (CFC), 2020 WL 2113528, at *4 (D. Del. May 4, 2020); *Intell. Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 759 (D. Del. 2012). "Because no records have been identified as only being available in either the Northern District of California or Delaware, this factor is neutral."  *VLSI*, 2018 WL 5342650, at *7.

7.    **Enforceability of the Judgment**

This factor is also neutral because "[t]here is no suggestion that a judgment would be unenforceable in either the District of Delaware or the Northern District."  *Altera*, 842 F. Supp. 2d at 759.

8.    **Practical Considerations**

The Court must consider "practical considerations that could make the trial easy, expeditious, or inexpensive."  *Jumara*, 55 F.3d at 879.  As a practical matter, the parties are litigating in four separate fora – here, the Northen District, the ITC, and the JAMS Arbitration.  It would serve judicial economy to reduce that number by litigating the two federal court actions in one court, and would serve traditional economy by, at the least, "eliminat[ing] the cost associated with local counsel in Delaware."  *Papst*, 126 F. Supp. 3d at 444 ("[T]his added cost [is] a practical consideration that could make litigation here more expensive than in a transferee court like the Northern District of California.").

The Court also notes that Samsara's decision to initiate the ITC Investigation shortly after filing the Original Complaint in this action calls into question whether Samsara ever fully intended to litigate in this forum at all. The ITC filing entitles Motive to a stay of the patent claims under 28 U.S.C. § 1659(a), which "Samsara does not contest." (D.I. 31 at 1). As Samsara was surely aware, the result is that "any matters directly relating to the patent infringement claim will not be addressed until after the ITC investigation is complete." *FMC Corp. v. Summit Agro USA, LLC*, No. 14-51 (LPS), 2014 WL 3703629, at *3 (D. Del. July 21, 2014).[6]

One additional practical factor that weighs in favor of transfer is the Forum Selection Clause contained in Samsara's TOS. Although the Court does not construe the TOS or rule on its enforceability, it is nevertheless telling that, as a practical matter, Samsara's default forum is "the state and federal courts located in San Francisco County, California" under "the laws of the State of California." TOS § 20. Samsara simply cannot press that clause across the board against its customers while simultaneously claiming that the Northern District is inconvenient here. Accordingly, the Court finds that this factor weighs in favor of transfer.

### 9.    Relative Administrative Difficulty Due to Court Congestion

This factor weighs somewhat in favor of transfer. The Court takes judicial notice of the most recent Judicial Caseload Profiles, (D.I. 34, Ex. 9), as of December 31, 2023. In the District of Delaware, the median length of time between filing and disposition in civil cases is 8.3 months, there are 666 weighted filings per judgeship, and there are only four sitting judges. By comparison, the Northern District currently takes 6.9 months for the average civil disposition, has 486 weighted

---

[6]    Samsara's assertion that its non-patent claims should move forward in this Court in the meantime only tips the scale further in favor of transfer, for the purposes of the practicality prong. (D.I. 33 at 1). Litigating different claims in different venues at different speeds – all based on the same set of facts – promotes obvious inefficiencies that this factor was designed to curtail. *Papst*, 126 F. Supp. 3d at 444 (noting this prong's concern for "the interests of judicial economy").

filings per judgeship, and staffs 14 judges (with additional vacancies waiting to be filled).  In the Northern District, however, it takes nearly 11 months longer to get from filing to trial (48.9 months as compared to 38 months in Delaware).  Although there are similarities between the two districts in terms of caseload, the Court focuses on the difference in weighted filings per judge (666 to 486).  That metric, which factors in how complex and time-consuming civil actions are, suggests that the Northern District is less congested because it has about 180 (27%) fewer weighted filings per judgeship than this District.  In the Court's view, this factor weighs in favor of transfer.

### 10.    Local Interest in Deciding Local Controversies at Home

This factor favors transfer, but only slightly.  First, "patent issues do not give rise to a local controversy or implicate local interests."  *TriStrata Tech., Inc. v. Emulgen Labs., Inc.*, 537 F. Supp. 2d 635, 643 (D. Del. 2008).  Second, Delaware has an in interest in having its corporate citizens litigate in its own courts.  But the Northern District also has an interest in this litigation, since both parties have their principal place of business there, many of the alleged witnesses are California citizens, the accused products were developed there, and the claims implicate California law.  *Altera*, 842 F. Supp. 2d at 760.  Balancing those competing interests, the Court finds this factor weighs slightly in favor of transfer.

### 11.    Public Policies of the Fora

This factor is neutral.  Both parties are Delaware corporations and "Delaware's public policy encourages Delaware corporations to resolve their disputes in Delaware courts."  *VLSI*, 2018 WL 5342650, at *9.   That being said, the parties are headquartered in California, the action implicates largely California-based individuals, and there are key disputes under California law.  Because both fora have public policy interests, the Court finds that this factor is neutral.

## 12.    Familiarity of the Trial Judge with the Applicable State Law

Samsara asserts three California state law claims under the UCL, Cal. Civ. Code, and California common law.  In addition, the parties hotly contest a threshold dispute about the enforceability of the TOS and whether the parties should be forced to arbitrate, itself an inquiry to be taken up under the California state law of contracts.  California law runs throughout this litigation.[7]  Samsara argues that should not matter because "this Court is fully capable of applying California law."  (D.I. 33 at 18).  True, but that is not the test, and accepting that premise would obviate this prong altogether, given that every federal court is "fully capable" of applying foundational state law.  Regardless, the Northern District of California is undoubtedly "more familiar" with California law than this Court.

Samsara also asserts one claim under Delaware law, for unfair competition under the DDTPA.  Notably, Samsara asserted that claim for the first time in its Amended Complaint, only after receiving Motive's first motion to transfer.  In any event, the DDTPA analysis mirrors that of the Samsara's federal claims.  *See, e.g.*, *Mil. Certified Residential Specialist, LLC v. Fairway Indep. Mortg. Corp.*, 251 F. Supp. 3d 750, 757 (D. Del. 2017) ("Courts reviewing DDTPA violations apply the same standards as they apply to [Lanham Act] trademark infringement claims.").  Therefore, the Court finds that there is unlikely to be any entirely Delaware-specific law at issue in this case such that this forum has any great advantage over the Northern District. This factor favors transfer.

### C.    Balancing the Private and Public Factors

After balancing the twelve *Jumara* factors, the Court concludes that this case should be transferred to the Northern District.  Seven factors weigh in favor of transfer and only one weighs

---

[7]    The federal claims are not implicated under this *Jumara* prong.

against, with four factors neutral.  Samsara's choice to litigate in this Court is to be given paramount consideration.  Motive, however, has shown that this dispute is between companies headquartered in California, about events that took place in California, featuring Californian employee witnesses, under multiple counts of California law.  On top of that, the courts of Northern California are Samsara's typical preferred venue per its TOS, and this action will ultimately be at least partially – if not fully – stayed in light of the parties' ongoing disputes in other venues. Evaluating the factors together and giving each its appropriate weight, Motive has shown that the *Jumara* factors weigh strongly in favor of transfer.

## IV.     <u>CONCLUSION</u>

For the foregoing reasons, Defendant's motion to transfer the case to the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1404(a) is GRANTED.  An appropriate order will follow.