Ellisen S. Turner, P.C. (SBN 224842)
Ali-Reza Boloori (SBN 271489)
KIRKLAND & ELLIS LLP
2049 Century Park East
Los Angeles, CA 90067
Telephone: (310) 552-4200
Facsimile: (310) 552-5900
ellisen.turner@kirkland.com
ali-reza.boloori@kirkland.com

Joseph A. Loy, P.C. (*Pro Hac Vice*)
Joshua L. Simmons, P.C. (*Pro Hac Vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4980
Facsimile: (212) 446-4900
jloy@kirkland.com
joshua.simmons@kirkland.com

Jeanne M. Heffernan, P.C. (*Pro Hac Vice*)
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
Telephone: (512) 678-9100
Facsimile: (512) 678-9101
jheffernan@kirkland.com

Karthik Ravishankar (*Pro Hac Vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue N.W.
Washington, D.C. 20004
Telephone: (202) 389-5000
Facsimile: (202) 389-5200
karthik.ravishankar@kirkland.com

*Attorneys for Plaintiff Samsara Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

SAMSARA INC.,

Plaintiff,

v.

MOTIVE TECHNOLOGIES, INC.,

Defendant.

CASE NO. 3:24-CV-06049-JD

**NOTICE OF MOTION AND MOTION BY PLAINTIFF TO CONFIRM ARBITRAL AWARD AND ENTER JUDGMENT THEREON**

Date: June 12, 2024
Time :10:00 a.m.
Location: Courtroom 11, 19th Floor.
Judge: Hon. James Donato

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 12, 2025 at 10:00 a.m., or as soon thereafter as the matter may be heard, in the Courtroom of The Honorable James Donato, United States District Judge, located at the United States District Court for the Northern District of California, San Francisco Division, in Courtroom 11, 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiff Samsara Inc. ("Samsara") will and hereby does move the Court for an Order pursuant to Section 9 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* (1) confirming the Interim Arbitration Award ("Arbitral Award") issued by the Honorable James Ware of JAMS in favor of Samsara and against Defendant Motive Technologies, Inc., the Petitioner in the JAMS arbitration proceeding, JAMS Ref No. 5100001923, and (2) entering judgment thereon. Samsara has submitted and served a [Proposed] Order and a [Proposed] Judgment concurrently with the filing of this Motion.

The Court should confirm the Arbitral Award and enter judgment thereon pursuant to Section 9 of the Federal Arbitration Act because the Court has jurisdiction over the Parties and their disputes, the contract under which the Arbitration is proceeding states that such an arbitral award is fully enforceable, and no grounds exist to deny confirmation of the Arbitral Award. Judicial review of an arbitration award is both limited and deferential. Unless the Arbitral Award is vacated, modified or corrected, the Court "must grant such an order" confirming the award. 9 U.S.C. § 9.

Samsara bases its Motion on this Notice, the attached Memorandum of Points and Authorities, the Declaration of Ellisen S. Turner and other supporting papers, records and files in this action, and upon such other oral or documentary evidence or showing as the Court may entertain at the hearing of this Motion.

# TABLE OF CONTENTS

**I. INTRODUCTION ........ 1**

**II. FACTUAL AND PROCEDURAL BACKGROUND ........ 2**

A. Motive's Surreptitious Access of Samsara's Platform. ........ 2

B. Motive Commissions Two Benchmarking Studies ........ 7

C. The Arbitrator Finds That Samsara and Motive are Parties to a Contract Via Samsara's Terms of Service ........ 8

[redacted]

**III. ARGUMENT ........ 13**

A. This Court Has Jurisdiction to Review the Arbitrator's Interim Award. ........ 13

B. The Arbitrator "Must Grant" a Petition Absent Limited Exceptions. ........ 15

C. The Court Should Grant Samsara's Motion to Confirm the Arbitral Award. ........ 15

i. The Arbitrator Had the Authority to Issue a [redacted] ........ 15

ii. The Arbitral Award Is Not "Completely Irrational." ........ 16

iii. The Arbitral Award Does Not "Constitute[] Manifest Disregard of the Law." ........ 17

iv. The Court Must Confirm the Arbitral Award. ........ 20

**IV. CONCLUSION ........ 21**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ace/Cleardefense, Inc. v. Clear Defense, Inc.*,
47 Fed. App'x 582 (D.C. Cir. 2002) ....................14

*Allied N. Am. Ins. Brokerage Corp. of Cal. v. Woodruff-Sawyer*,
No. 4 Civ. 2527, 2005 WL 6583937 (N.D. Cal. Feb. 22, 2005)....................19

*Andrea Doreen, Ltd. v. Building Material Local Union 282*,
250 F. Supp. 2d 107 (E.D.N.Y. 2003) ....................15

*Arrowhead Global Sols., Inc. v. Datapath, Inc.*,
166 Fed. App'x 39 (4th Cir. 2006) ....................14

*Asset Realty, LLC v. Wilson*,
No. 2:21-cv-00081-RSM (W.D. Wash.)....................2

*Berland v. Conclave, LLC*,
No. 20 Civ. 922, 2021 WL 461727 (S.D. Cal. Feb. 9, 2021) ....................14, 21

*Biller v. Toyota Motor Corp.*,
668 F.3d 655 (9th Cir. 2012) ....................20

*Blizzard Ent. Inc. v. Ceiling Fan Software LLC*,
28 F. Supp. 3d 1006 (C.D. Cal. 2013) ....................17

*Bosack v. Soward*,
586 F.3d 1096 (9th Cir. 2009) ....................16, 17, 19

*Corbel Communications Indus. LLC v. Lat Long Infrastructure LLC*,
No. 21 Civ. 8097, 2021 WL 6104231 (C.D. Cal. Oct. 29, 2021)....................19

*Coutee v. Barington Capital Grp.*,
336 F.3d 1128 (9th Cir. 2003) ....................15

*Employers Ins. of Wausau v. Nat'l Union Fire Ins. Co. of Pittsburgh*,
933 F.2d 1481 (9th Cir. 1991) ....................16

*G.C. & K.B. Investments, Inc. v. Wilson*,
326 F.3d 1096 (9th Cir. 2003) ....................15

*Hall Street Assoc. v. Mattel, Inc.*,
552 U.S. 576 (2008)....................1, 15, 20

*Hellmich v. Mastiff Contracting, LLC*,
No. 8:14-cv-01354-DOC-KES (C.D. Cal.), Dkt. 127, 128-5 ....................2

*Luong v. Circuit City Stores, Inc.*,
368 F.3d 1109 (9th Cir. 2004) ....................17

*New United Motor Mfg., Inc. v. United Auto Workers Local 2244*,
617 F. Supp. 2d 948 ....................15

*Pacific Reinsurance Mgm't Corp. v. Ohio Reinsurance Corp.*,
935 F.2d 1019 (9th Cir. 1991) ....................1, 13, 16

*PowerAgent Inc. v. Electronic Data Sys. Corp.*,
358 F.3d 1187 (9th Cir. 2004) ....................15

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
559 U.S. 662 (2010)....................17

*T-Mobile USA Inc. v. Verity Wireless Inc.*,
No. 2:21 Civ. 733, 2021 WL 4295845 (W.D. Wash. July 22, 2021) ....................14, 19

*Vital Pharm. V. PepsiCo, Inc.*,
No. 20 Civ. 62415 (S.D. Fla. Dec. 21, 2020)....................21

*White v. Davis*,
30 Cal. 4th 528 (2003) ....................17

*Yasuda Fire & Marine Ins. Co. of Europe, Ltd v. Continental Cas. Co.*,
37 F.3d 345 (7th Cir. 1994) ....................14

**Statutes**

9 U.S.C. § 1....................2

9 U.S.C. §§ 10–11....................15

Federal Arbitration Act .................... *passim*

**Rules**

JAMS Rule 24(c) ....................18

JAMS Rule 24(e) ....................15

## I. INTRODUCTION

This motion presents a simple request: that the Court confirm the Arbitrator's Interim Award, Ex. 1 ("Arbitral Award"), [redacted] Plaintiff Samsara Inc.'s ("Samsara") [redacted] Motive Technologies, Inc. ("Motive"). Motive initiated the arbitration, asserting that Samsara and Motive are parties to a contract under Samsara's Terms of Service ("TOS")[redacted] Samsara respectfully requests the Court to do the same here.

[redacted] None of those exceptions are present here[redacted]

[1] Samsara has provisionally redacted this public filing consistent with Motive's untenable and indefensible view that anything related to the Arbitration is confidential. *See* Dkt. 111. While Samsara disputes Motive's position, these redactions are included for completeness.

Samsara therefore respectfully requests the Court confirm the Arbitral Award.[2] 9 U.S.C. § 1 *et seq*.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Motive's Surreptitious Access of Samsara's Platform.

For years, Motive employees, including its senior executives, have used false names and company affiliations to surreptitiously access Samsara's Products, Software, Software System, and Services[3] (collectively, "Samsara Platform") to unfairly and unlawfully compete with Samsara in the marketplace.

[2] Samsara submits herewith a proposed order, consistent with what courts have entered for other petitions to confirm

[3] Under the TOS, the "Products" includes Samsara's hardware devices and "Samsara Software," which encompasses Samsara's Connected Operations® Platform and software embedded in or otherwise running on Samsara Products. Ex. 2 § 1.20. Specifically, "Products" is defined as "Hardware and Services," wherein "Hardware" includes "hardware devices such as gateways, cameras, sensors, controllers, vision systems, and accessories," and "Services" include "Samsara Software"—*i.e.*, Samsara's Connected Operations® Platform, the software embedded in or otherwise running on Samsara products, and improvements, modifications, patches, updates, and upgrades thereto, *id.* §§ 1.10, 1.19, 1.20—as well as training, consulting, or other professional services provided to Samsara's customers. *Id.* §§ 1.10, 1.20, 1.21, 1.27. "Samsara Software Systems" is defined as "the Samsara Software and any networks, systems, products, services, or data of Samsara, its providers, its partners, its customers, or any other third party, integrated with or connected to such Samsara Software." *Id.* § 1.26.

| Captures from Samsara's Dash Cam of Motive Employees Using Samsara's Products | Motive Personnel |
|---|---|
| <br><br>Ex. 3 | <br>**Shoaib Makani, Chief Executive Officer**<br><br>**Jairam Ranganathan, Chief Product Officer** |
| <br><br>Ex. 4 | <br>**Siva Gurumurthy, Chief Technology Officer** |

| Captures from Samsara's Dash Cam of Motive Employees Using Samsara's Products | Motive Personnel |
| --- | --- |
| Ex. 5 (SAMS_ARB_000001303) | **Abhishek Gupta, VP of Product Management** |

Ex. 6.

Ex. 6.

Ex. 7 at 9.

Exs. 6; 8; 9; 10; 11.

[redacted] Ex. 12. Across the accounts associated with these five companies, Motive employees have [redacted] driven over 35,000 miles using Samsara's products. Exs. 13, 14; 15 at 250–256.

[redacted] Ex. 16. Similarly, Mr. Gupta, Motive's VP of Product Management, submitted multiple customer service tickets to Samsara requesting information about Samsara's products. For example, Mr. Gupta submitted a ticket on March 15, 2022 via Samsara's web service, asking "How do I add the JD link Integration to my samsara account? I am also interested in the CAT visionlink integration." Ex. 17. In another ticket submitted on October 7, 2019, Mr. Gupta requested Samsara customer service "enable the AI features [on the dual facing dash cam] . . . such as tailgating, distracted driving and mobile use." Ex. 18. In both instances, Mr. Gupta used a fake company name "Monstera Transport" to conceal his affiliation with Motive, pose as actual Samsara customers, and elicit competitive, non-public information from Samsara's customer support representatives.

Motive's actions have been confirmed in a co-pending ITC proceeding between the parties, too. [redacted] Ex. 19 at 1119. [redacted] *Id.* at 1144. Motive also expressly acknowledged, in public filings in the ITC, that "Motive's employees—including Motive's CEO—test[ed] Samsara's accused products, including accessing Samsara's cloud-based website[.]" Ex. 20 at 315.



Faced with this undisputed evidence, Exs. 21 ¶¶ 3–6; 22 ¶¶ 14–15. Ex. 23 at 976–977.

But Motive's position is ripe with contradictions. Exs. 21 ¶¶ 3–6; 22 ¶¶ 14–15.

| Motive CEO, Shoaib Makani, Sworn Testimony | |
|---|---|
| Ex. 22 ¶ 7 (emphasis added). | |



Ex. 23 at 976–977, 1009–1010 (emphasis added).

*E.g.*, Ex. 24.

*E.g.*, Exs. 25; 26.

**B. Motive Commissions Two Benchmarking Studies.**

Beyond Motive's fraudulent access scheme, Motive paid for least two benchmarking studies to purportedly "test" and "compare" Motive's products against Samsara's to gain a competitive advantage. The first study was published in 2022 by the research firm Strategy Analytics. Ex. 27

, Ex. 28, Motive, in 2023, paid yet another research firm, VTTI, to perform a second benchmarking study of Samsara's AI video-based safety products and platform. Ex. 29 (https://gomotive.com/blog/vtti-dash-cam-alert-benchmark/) (claiming that "[Motive] called on" VTTI to put its products and others', including Samsara's, "to the test").



Ex. 30. Even VTTI itself has acknowledged that its study was flawed, at least because one feature VTTI purported to test was not enabled on Samsara's device, and VTTI issued a revised study with that disclaimer. Ex. 31. Samsara was never consulted—or even advised—when the studies were being done;

Motive and its paid agents, VTTI and Strategy Analytics, moved forward without Samsara's knowledge or consent.

Nevertheless, Motive relies on the two studies to compete with Samsara, making statements that are false on their face. For example, numerous [redacted] Ex. 32. Motive also prominently advertises the VTTI study and the Strategy Analytics study on its website, using the false test results to claim that its AI Dashcam "successfully alerts drivers to unsafe driving behavior 86% of the time, 3-4x more than Samsara[.]" Ex. 33. Motive's actions harm Samsara because, [redacted]." Ex. 34 at 1044–1045; *see also*, Ex. 36 at 4, 20, 26 (2024 10-K referencing increased competition by Motive and associated harm). Moreover, the timing of Motive's access is consistent with Motive's copying of Samsara's product development. Ex. 15 at 255–56.

[redacted] Ex. 22 ¶ 14. [redacted] *Id.* ¶ 4; Ex. 21 ¶ 4. [redacted] Ex. 37 at 55:14–58:24.

### C. The Arbitrator Finds That Samsara and Motive are Parties to a Contract Via Samsara's Terms of Service.

On January 24, 2024, Samsara sued Motive to put an end to Motive's patent infringement, false advertisements, and its employees' unauthorized and fraudulent access to Samsara's computers and networks. Dkt. 1. In its Amended Complaint, Samsara brought nine claims against Motive, which fall into three categories:

- Claims against Motive for infringing on three Samsara patents (Counts I–III, "Patent Claims"),
- Claims against Motive for false advertising under federal and state statutes (Count IV, VIII, IX, "False Advertising Claims"), and
- Claims against Motive based on its employees' efforts to unlawfully access Samsara's Platform, including fraud, computer fraud, and unfair competition arising from improper access (Counts V, VI, VII, the "Fraud Claims").

On February 28, 2024, Motive demanded Samsara's claims proceed in arbitration, because Samsara's TOS contains an arbitration clause. Dkt. 49-06 (Motive's Demand) ¶ 5 ("[Samsara] and Motive are bound by Samsara's Terms of Service, which apply to accounts created on its platform[.]"). Ex. 38. At Motive's urging and over Samsara's opposition, the Arbitrator found that a valid, enforceable contract was formed under Samsara's TOS when Motive accessed and used Samsara's products and software, and that the False Advertising Claims and the Fraud Claims fall within the arbitration provision, and are thus arbitrable. *See* Dkt. 49-13 at 11 ("The Arbitrator treats the allegations in the civil cases as judicial admissions that Motive ***accepted and agreed*** to be bound by the Terms of Service by taking the alleged actions.") (emphasis in original); *see also* Ex. 39 at 14–21

Upon the Arbitrator's finding that the parties entered into a valid, enforceable agreement, Dkt. 100-01, Ex. 40. Under the TOS, competitors are completely prohibited from using Samsara's products and platform, while all users of Samsara's products and platform are prohibited from the following:

- "impersonat[ing] or misrepresent[ing] an affiliation with any person or entity," Ex. 2 § 5(vii);
- "benchmark testing on [Samsara's] Software," as well as "authoriz[ing], permit[ting], encourage[ing], or enabl[ing] any other individual or entity" to do the same, *id.* § 5(xiii);
- "use or access [] [Samsara's] Software for any competitive purpose," *id.* § 5(viii).

Ex. 40 at 12–19.

. Ex. 7; Ex. 41 at 13–14.

Ex. 41 at 12–13.

*Id.* at 6–7.

*Id.* at 12.

Ex. 42 at 11.



*See* Ex. 42 at 10.

*Id.* at 13.

*Id.*

*See generally* Ex. 43.

*Id.* at 3.

*Id.* at 5–10.

Ex. 44 5–10.



. *Id.*

Ex. 45.

Ex. 46 at 35:9–23.

*Id.* at 29:9–14, 31:12–32:10.

*Id.* at 30:15–20.

. *Id.* at 22:7–23:23; 36:5–37:2, 31:12–32:21, 41:6–42:1, 44:21–46:22.

On this record, on April 15, 2025, the Arbitrator

*Id.* at 5.



*Id.*

Ex. 48 at 3.

On April 28, 2025, the Arbitrator

Ex. 35 at 2–3.

Ex. 1 at 2.

## III. ARGUMENT

### A. This Court Has Jurisdiction to Review the Arbitrator's Interim Award.

Under Section 9 of the FAA, "[i]f the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration," then any party to the arbitration may move for an order confirming the award within one year of the award. *See* 9 U.S.C. § 9. An arbitration award is ripe for judicial confirmation when the award is the arbitrator's final determination.

[redacted]

Moreover, the parties agreed that to the extent the present case is found arbitrable, it must be stayed rather than dismissed under recent Supreme Court precedent *Smith v. Spizzirri*, to allow this Court to retain jurisdiction to assist the parties in the arbitration, including such as enforcing the arbitral award. *See* Dkts. 41, 41-3, 42. In *Smith v. Spizzirri*, the Supreme Court held that "[w]hen a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration." 601 U.S. 472, 475–76 (2024). In so holding, the Court noted that "[k]eeping the suit on the court's docket makes good sense" because "[t]he FAA provides mechanisms for *courts with proper jurisdiction to assist parties in arbitration by, for example . . . facilitating recovery on an arbitral award*[.]" *Id.* at 478 (emphasis added). And pursuant to this precedent, Motive "agree[d] that . . . the appropriate remedy is to stay all of Samsara's claims rather than dismiss them." Dkt. 42. Thus, the Court here also has

jurisdiction to review the Arbitral Award, which enjoins Motive from further breaching conduct until the final arbitral hearing.[4]

**B. The Arbitrator "Must Grant" a Petition Absent Limited Exceptions.**

The court "must grant" a petition to confirm an arbitral award "unless the award is vacated, modified, or corrected as prescribed" in Sections 10 and 11 of the FAA. *See* 9 U.S.C. § 9; *see Hall Street Assoc.*, 552 U.S. at 587 ("There is nothing malleable about 'must grant,' which unequivocally tells courts to grant confirmation in all cases, except when one of the 'prescribed' exceptions applies"). Under Sections 10 and 11, grounds for vacating or correcting an arbitration award are limited to: (1) corruption, fraud, or undue means in the procurement of the award, (2) arbitrator corruption or partiality, (3) arbitrator misconduct or exceeding of powers, and (4) corrections for material miscalculations, exceeding of powers, or imperfection of form. 9 U.S.C. §§ 10–11; *G.C. & K.B. Investments, Inc. v. Wilson*, 326 F.3d 1096, 1104 (9th Cir. 2003). Because these are exclusive grounds for vacatur, "review of the award itself is 'both limited and highly deferential' and an arbitration award may be vacated only if it is 'completely irrational' or 'constitutes manifest disregard of the law.'" *PowerAgent Inc. v. Electronic Data Sys. Corp.*, 358 F.3d 1187, 1193 (9th Cir. 2004) (quoting *Coutee v. Barington Capital Grp.*, 336 F.3d 1128, 1132–33 (9th Cir. 2003)).

**C. The Court Should Grant Samsara's Motion to Confirm the Arbitral Award.**

i. The Arbitrator Had the Authority to Issue a [REDACTED]

Under the TOS, the parties granted the Arbitrator "full authority to award preliminary and permanent injunctive relief, damages, and any other relief available in law, at equity, or otherwise pursuant to applicable law" in accordance with the JAMS Rules and California laws. Ex. 2 §§ 19.1; 20. Further, JAMS Rule 24(e) empowers the Arbitrator to "grant whatever interim measures are deemed necessary, including injunctive relief and measures for the protection or conservation of property and disposition of

[4] [REDACTED]

disposable goods." Accordingly, once the arbitration proceeded, [redacted] Motive has never claimed otherwise.

ii. <u>The Arbitral Award Is Not "Completely Irrational."</u>

The "completely irrational standard" is "extremely narrow and is satisfied only where the arbitration decision fails to draw its essence from the agreement." *Bosack v. Soward*, 586 F.3d 1096, 1106 (9th Cir. 2009) (cleaned up). [redacted]

The Arbitrator's Award is rational. [redacted] at 2; Ex. 2 § 2 ("by [] accessing and/or using the [Samsara] Products . . . you accept and agree to be bound by [the TOS]"). *Second*, [redacted] Dkt. 109-01 [redacted] *Third*, [redacted] Dkt. 109-01 at 3–4; Ex. 2 § 20 ("These Terms and any action related thereto will be governed by the laws of the State of California without regard to its conflict of laws provisions."). [redacted]

Thus, the Arbitrator's decision, and the resulting Arbitral Award, is not "completely irrational."

iii. The Arbitral Award Does Not "Constitute[] Manifest Disregard of the Law."

The Ninth Circuit has explained that "manifest disregard of the law" means "something more than just an error in the law or a failure on the part of the arbitrators to understand or apply the law." *Luong v. Circuit City Stores, Inc.*, 368 F.3d 1109, 1112 (9th Cir. 2004). Rather, "it must be clear from the record that the arbitrator[] recognized the applicable law and then ignored it." *Bosack*, 586 at 1104; *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 672 n.3 (2010) ("[The standard requires a] showing that the arbitrators 'knew of the relevant legal principle, appreciated that this principle controlled the outcome of the disputed issue, and nonetheless willfully flouted the governing law by refusing to apply it.'") (internal brackets omitted).


Ex. 42



*See generally* Ex. 7. *Third*, Ex. 42 at 11–12. Accordingly, . *Id*. at 12.

. Ex. 43 at 3.

, *see, e.g.*, Ex. 45; Ex. 46 at 33:7–19 ( Dkt. 109-01 at 5.

.



Dkt. 109-01 at 5.

Ex. 43 at 5–10.

Dkt. 109-01 at 5.

*Id.*

There is simply no evidence that the Arbitrator "ignored" the applicable law, or anything else, in granting the Interim Award. *Bosack*, 586 F.3d at 1104 ("There must be some evidence in the record, *other than the result*, that the arbitrator[] [was] aware of the law and intentionally disregarded it."). To the contrary,

[redacted] *See* Ex. 1 at 2.

Accordingly, the Arbitrator's Award was not "clearly irrational" nor does it constitute a "manifest disregard of the law." [redacted]

iv. <u>The Court Must Confirm the Arbitral Award.</u>

The Supreme Court has unequivocally held that the court ***must*** confirm an Arbitration Award unless one of the "prescribed exceptions" under Section 10 of the FAA applies. *See Hall Street Assoc.*, 552 U.S. at 587; 9 U.S.C. § 9. And as explained above, such "prescribed exceptions" are limited to (1) corruption, fraud, or undue means in the procurement of the award, (2) arbitrator corruption or partiality, (3) arbitrator misconduct or exceeding of powers, and (4) corrections for material miscalculations, exceeding of powers, or imperfection of form. 9 U.S.C. § 10. Notably, "[Section] 10 of the FAA provides no authorization for a merits review." *Biller v. Toyota Motor Corp.*, 668 F.3d 655, 664 (9th Cir. 2012).

None of the "prescribed exceptions" are applicable here. [redacted]. Dkt. 109-01 at 5; Ex. 35 at 3. [redacted] Under the FAA and Supreme Court precedent, the Court therefore must confirm the Arbitral Award upon this motion.

[redacted] Ex. 35 at 2–3. [redacted] *Id* at 3. [redacted]

*Id.* Ex. 1 at 2. Thus, the Arbitral Award is ripe for confirmation by this Court.

## IV. CONCLUSION

Samsara respectfully requests that the Court confirm the Arbitral Award and enforce

DATED: May 8, 2025

Respectfully submitted,

/s/ *Ellisen S. Turner*

Ellisen S. Turner, P.C. (SBN 224842)
Ali-Reza Boloori (SBN 271489)
KIRKLAND & ELLIS LLP
2049 Century Park East
Los Angeles, CA 90067
Telephone: (310) 552-4200
Facsimile: (310) 552-5900
ellisen.turner@kirkland.com
ali-reza.boloori@kirkland.com

Joseph A. Loy, P.C. (*Pro Hac Vice*)
Joshua L. Simmons, P.C. (*Pro Hac Vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4980
Facsimile: (212) 446-4900
jloy@kirkland.com
joshua.simmons@kirkland.com

Jeanne M. Heffernan, P.C. (*Pro Hac Vice*)
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
Telephone: (512) 678-9100
Facsimile: (512) 678-9101
jheffernan@kirkland.com

Karthik Ravishankar (*Pro Hac Vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue N.W.
Washington, D.C. 20004
Telephone: (202) 389-5000
Facsimile: (202) 389-5200
karthik.ravishankar@kirkland.com

*Attorneys for Plaintiff Samsara Inc.*

**CERTIFICATE OF SERVICE**

On May 8, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all persons registered for ECF. All copies of documents required to be served by Fed. R. Civ. P. 5(a) and Civil L.R. 5-1 have been so served.

/s/ *Ellisen S. Turner*
Ellisen S. Turner